UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

SHARON GUTHRIE,

    Plaintiff,

vs.

THE UNITED STATES OF AMERICA,

    Defendant.

No. 1:22-cv-00162-DCLC-SKL

**PLAINTIFF'S MOTION TO EXCLUDE
DEFENDANT'S EXPERT WITNESS JAMES E. NORRIS, II
AND INCORPORATED MEMORANDUM IN SUPPORT**

  **COMES NOW** Plaintiff, by and through counsel, and moves the Court to exclude the expert opinion testimony of James E. Norris, II under Fed. R. Evid. 702, 703, and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). In support of the Motion, Plaintiff shows the Court the following:

### INTRODUCTION

  James E. Norris, II, ACTAR, is a licensed Professional Engineer and eminently well-qualified accident reconstructionist. He regularly offers opinions regarding speed, timing, and distance, based on physical and objective evidence including Event Data Recorder (EDR) data, gouge marks in pavement, and tire marks. In this case, which arose after an Oshkosh Palletized Load System (PLS), struck a Dodge pickup on Highway 30 near Athens, Tennessee, there is no EDR data, no dash camera video, and no evidence of gouges in the pavement or tire marks.

  Without physical and objective evidence with which to conduct science, Mr. Norris instead proposes to express an opinion regarding vehicle placement based on "the discrepancy between…the parties of where the PLS vehicle was," i.e. the subjective statements of parties and

witnesses. Because Mr. Norris's proposed testimony addresses matters that do not require specialized knowledge, i.e. a credibility determination in a he-said/she-said dispute, which the factfinder is competent to evaluate, it is neither reliable nor helpful to the factfinder. Therefore, the Court should exercise its gatekeeper role and exclude the testimony of Mr. Norris.

## RELEVANT FACTS

On the morning of December 15, 2020, Mrs. Guthrie and SSG Anderson set out on two very different journeys. Anderson, a mechanic, needed to test-drive the PLS vehicle he had just finished servicing. Anderson Dep. Tr. 42:6. Mrs. Guthrie, who is fifty-six, wanted to visit her mother, whom she had not seen in several months. Guthrie Dep. Tr. 9:4-5, 83:6-8. This is a photo of the truck Ms. Guthrie was driving at the time of the collision:



*Guthrie v. United States*



**Photograph 2: Vehicle 1 Final Rest** (Source: Client)

*Appendix B – Exhibits* Page | 2

*See* Government Expert Disclosures ("Norris Report") at p. 15 of 29.

As Ms. Guthrie testified, she was traveling in the left lane of the highway when the PLS driven by Samuel Anderson, turned into her from the right lane. *See e.g.* Guthrie Dep. Tr. at 95:2-6. This is a photo of the PLS that struck Mrs. Guthrie's truck:



Photograph 5: Vehicle 2 Damage (Source: Client)

*Appendix B – Exhibits*     Page | 5

*See* Norris Report at p. 18 of 29.

As advertised by its manufacturer, a PLS "enables efficient supply and equipment distribution in even the most treacherous environments." *See* Oshkosh Defense Heavy Tactical Vehicles website available at https://oshkoshdefense.com/vehicles/heavy-tactical-vehicles/pls-a1/.

Within hours of the accident, Staff Sergeant Anderson submitted a written "Sworn Statement" (DA Form 2823). A copy of this Statement is attached as Exhibit 10 to James Norris's deposition. As noted on the form, the "Principle Purpose" of the DA 2823 is "[t]o document potential criminal activity involving the U.S. Army, an to allow Army officials to maintain discipline, law and order through investigation of complaints and incidents."

The handwritten sworn statement appears to read as follows:

> I was driving a PLS on a road test, and went to make a U turn So I put my turn signa on looked in my rear view It was clear. So I made the turn That's when the dodge truck hit me. So I turned the PLS off and then I got out to check on the driver of the dodge. Nothing follows.

Sworn Statement (December 15, 2020).

At his deposition, on January 9, 2024, Staff Sergeant Anderson offered the following description of what happened in the accident:

> Basically I was going down 30. Like I said, I was right at the speed limit [55 mph] or slightly below it and pretty much looking for a spot to turn around and I was in the right lane because like I said, I was creeping and looking for a spot to turn around. I spotted a spot, looked in my mirror, got over. And like I stated earlier, the PLS's turning radius is really wide compared to your average vehicle. So basically I approached the turning lane. I didn't get in the turning lane. I put my blinker on and looked in my right mirror. I rode the line a little bit, looked back in my left mirror and made the turn. At that point in time, I heard a boom.

Anderson Dep. Tr. 74:8-22.[1]

## NORRIS'S OPINIONS

In his report, James Norris disclosed the following opinions:

---

[1] Less than one month before his deposition, but nearly three years after the accident, Staff Sergeant Anderson signed a Declaration containing a much more detailed account of the collision. At his deposition, however, Anderson was instructed not to answer "[w]hat portion of this [Declaration] did [he] write and which portion of it did [he] have assistance with[.]" Anderson Dep. Tr. 78:23-79:9.

1) "[T]he available evidence is not consistent with [Mrs. Guthrie's] vehicle traveling at a speed in excess of the posted speed limit at the time of the collision." Norris Report at 4, Paragraph 1; *see also*, Norris Dep. Tr. 119:25-120:6.

2) "[I]t is more probable than not that [the PLS] was traveling at a low speed (20 miles per hour or less) at the time of the collision." Norris Report at 4, Paragraph 2; *see also* Norris Dep. Tr. 120:10-121:25.

3) The PLS has a centerline turning radius of approximately 40 feet. Norris Report at 4, Paragraph 3; *see also* Norris Dep. Tr. 122:1-9.

4) "The results of this assessment indicate that [the PLS] would have had to 'swing out' the right and partially enter the right lane of Highway 30 prior to initiating the left-turn in order to complete the U-turn maneuver at the intersection." Norris Report at 4, Paragraph 4; *see also* Norris Dep. Tr. 123:14-18.

5) "[It is] more probable than not, the impact occurred in the median area of the intersection, with [Mrs. Guthrie's pickup] only partially in the left (interior) travel lane of Highway 30." Norris Report at 4, Paragraph 5; *see also* Norris Dep. Tr. 123:21-25.

6) "[T]he available evidence is not consistent with [the PLS] beginning its maneuver from the right lane of Highway 30." Norris Report at 4, Paragraph 6(a); *see also* Norris Dep. Tr. 126:6-11.

7) "[T]he available evidence is not consistent with [the PLS] traveling at 35 to 40 miles per hour at the time of impact." Norris Report at 4, Paragraph 6(b); *see also* Norris Dep. Tr. 127:9-16.[2]

---

[2] This section of Norris's Report also contains a seventh numbered paragraph, but at his deposition, Norris characterized this paragraph as "an overall summary of the occurrence of the accident." *Id*. at 128:2-17.

At his deposition, Mr. Norris indicated that he intended to express opinions "relate[d] to the timing and distance calculations…that I didn't specifically call out in the report." Norris Dep. Tr. 128:18-131:6. Because these opinions were not properly disclosed pursuant to Rule 26, they should be excluded. *See e.g.*, *Pridemore-Turner v. Univ. Health Sys.*, No. 3:20-CV-00318-DCLC-HBG, 2021 U.S. Dist. LEXIS 235014, at *6 (E.D. Tenn. Dec. 8, 2021); *see also*, *Hill v. Century Arms, Inc.*, No. 3:21-CV-31-TAV-DCP, 2023 U.S. Dist. LEXIS 201693 (E.D. Tenn. Nov. 9, 2023).

## ARUGMENT AND CITATION TO AUTHORITY

**I.  Legal Standard**

All evidence must clear the relatively low hurdle of relevancy set by Fed. R. Evid. 401. *Eastman Chem. Co. v. SGS N. Am., Inc.*, No. 2:15-CV-344, 2019 U.S. Dist. LEXIS 231060, at *3-5 (E.D. Tenn. Feb. 4, 2019). Rule 702 presents the next hurdle:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702 (2023)

As the Court noted in *Eastman*, "[t]he helpfulness requirement of Rule 702 relates to the relevancy requirement of Rule 401. If the testimony does not relate to an issue of the case, it 'is not relevant and, ergo, non-helpful.'" 2019 U.S. Dist. LEXIS 231060, at *3-5 (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 591 (1993) "The testimony 'requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility.'" *Id*.

The Court must insure that expert testimony is not only relevant, but also reliable. *Daubert*, 509 U.S. at 589; *Kumho Tire Co., Ltd. V. Carmichael*, 526 U.S. 137, 147 (1999). The Court must act as a "gatekeeper" to "determine whether the testimony has a reliable basis in the knowledge and experience of [the relevant] discipline." *Kumho Tire*, 526 U.S. at 148-49 (cleaned up).

**II.     Argument**

According to Mr. Norris, "the key factors of the case seem to be the discrepancy between the two statements of the parties [i.e, Mrs. Guthrie and Staff Sergeant Anderson] of where the PLS vehicle was." Norris Dep. Tr. 131:10-13. That is to say, "the primary issues were more so vehicle placement and not so much speed." *Id*. at 132:7-10.

Mr. Norris does not dispute that "the PLS truck struck the Dodge." Norris Dep. Tr. 138:7-8. But, he recognizes that the placement of the vehicles immediately before impact significantly affects the liability determination in this case. Either (1) the PLS was in the right lane before it "struck the Dodge," and Mrs. Guthrie was passing in the left lane, or (2) the PLS was in the left lane and it had to "swing out" to the right before it "struck the Dodge," or (3) the PLS was in the left lane, did not swing out, but "struck the Dodge" when Mrs. Guthrie attempted to pass in the dedicated turn lane.

In order to avoid liability for this collision between a woman on her way to visit her aging mother, and a vehicle designed for "the most treacherous environments," Mr. Norris intends to offer the opinion that the PLS "would have had to swing out to the right a little bit…to complete…the manuever." Norris Dep. Tr. 122:15-19. To reach this opinion, Mr. Norris compared the "Significant Testimony" of Mrs. Guthrie and Anderson. *See* Norris Report at 7. In fact, Mr. Norris compares the transcript of Ms. Guthrie's deposition testimony with "a statement on December 11, 2023" by "Mr. Samuel Anderson (driver of Vehicle 2)." *Id*.

In short, and unsurprisingly, Mr. Norris credits the "significant testimony" of Staff Sergeant Anderson in the December 11, 2023 Declaration and concludes that "overall, the occurrence of this incident is more consistent with the description provided by the driver of Vehicle 2 (Mr. Anderson) that the account provided by the driver of Vehicle 1 (Ms. Guthrie) in her deposition testimony." Norris Report at 5.

Significantly, Anderson's December 15, 2020 Sworn Statement makes no mention of which lane he was traveling in when the PLS struck the Dodge. In fact, according to Anderson, "the dodge truck hit me." *Id*. At his deposition, Anderson testified that he was "right at the speed limit [55 mph] or slightly below it and pretty much looking for a spot to turn around and I was *in the right lane*…creeping and looking for a spot to turn around." Anderson Dep. Tr. 74:8-22. When he "spotted a spot" he "got over…approached the turning lane…rode the line a little bit, looked back in my left mirror and made the turn." *Id*.[3]

Mr. Norris acknowledged at his deposition that he did not have, but would have liked to have seen "evidence showing, you know, a specific gouge or a tire mark or something that would indicate a specific area of impact, a picture of it on the roadway." Norris Dep. Tr. 125:16-25.

Mr. Norris's opinion regarding the placement of the vehicles is not based on anything resembling a scientific principle or method. Rather, he concedes that due to the lack of physical and objective evidence, he relied primarily on the subjective statements of parties and witnesses, particularly in concluding that the PLS remained in the left lane.

In *Georgel v. State Farm Mut. Auto. Ins. Co.*, No. 13-57-DLB-EBA, 2015 U.S. Dist. LEXIS 103083, at *20 (E.D. Ky. Aug. 6, 2015), another district court within this Circuit

---

[3] Anderson appears to contradict this sequence of events in his Declaration when he swore that he was "in the left travel lane" for "at least three minutes" prior to making the turn.

considered similar facts and concluded that the expert there should be excluded. *See also Strong v. U-Haul Co.*, No. 1:03-cv-00383, 2006 U.S. Dist. LEXIS 97158, at *24-25 (S.D. Ohio Dec. 28, 2006). It is not enough that Mr. Norris's methodologies as an accident reconstructionist are generally acceptable. When it comes to establishing reliability, "[n]either the expert's voucher nor general acceptance in the field nor even long term, repeated use of the theory suffices." *Georgel v. State Farm Mut. Auto. Ins.* Co., No. 13-57-DLB-EBA, 2015 U.S. Dist. LEXIS 103083, at *21-22 (E.D. Ky. Aug. 6, 2015) (quoting 1 McCormick on Evidence, § 13 (7th ed. 1999)).

Here, as in *Georgel*, Mr. Norris's opinions "are not 'supported by appropriate validation,' but rather are based almost exclusively on the parties' statements and testimony, which are highly subjective." *Id*. Even if Mr. Norris weighed the "these statements in light of his experience in the field,…without explaining why that experience provides a sufficient basis for his opinions, such efforts do not satisfy the required standard under *Daubert* and Rule 702." *Id*. "Simply put, there is still too great an analytical gap between the data and the opinion proffered." *Id.* (cleaned up). "Such measures, though critical when assessing a witness's credibility, are not beyond the understanding of an average layperson." *Id*. It is well-settled that "witness credibility is a jury function." *Burley v. Gagacki*, 729 F.3d 610, 621 (6th Cir. 2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).

**CONCLUSION**

Without physical and objective evidence with which to conduct science, Mr. Norris instead proposes to express an opinion regarding vehicle placement based on "the discrepancy between…the parties of where the PLS vehicle was," i.e. the subjective statements of parties and witnesses. Because Mr. Norris's proposed testimony addresses matters that do not require specialized knowledge, i.e. a credibility determination in a he-said/she-said dispute, which the

factfinder is competent to evaluate, it is neither reliable nor helpful to the factfinder. Therefore, the Court should exercise its gatekeeper role and exclude the testimony of Mr. Norris.

RESPECTFULLY SUBMITTED this 1st day of March, 2024.

*/s/ Cameron C. Kuhlman*
CAMERON C. KUHLMAN
Georgia Bar Number: 596159
*Attorney for Plaintiff*

**WETTERMARK & KEITH, LLC**
1232 Premier Drive, Suite 325
Chattanooga, TN 37421
Phone: (423) 933-1080
Fax: (205) 460-2596
ckuhlman@wkfirm.com