UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

SHARON GUTHRIE,

    Plaintiff,

v.

THE UNITED STATES OF AMERICA,

    Defendant.

No. 1:22-cv-00162
JUDGE CORKER

### PLAINTIFF'S MOTION TO AMEND AD DAMNUM CLAUSE
### PURSUANT TO 28 U.S.C. § 2675(b)

**COMES NOW** Plaintiff, by and through counsel, and files this Motion to Amend Ad Damnum Clause Pursuant to 28 U.S.C. § 2675(b). As shown below, based on newly discovered evidence and intervening facts, Mrs. Guthrie moves to increase the sum demanded from $792,000.00 to $1,338,544.43. In support of her Motion, Mrs. Guthrie respectfully shows the Court the following:

### FACTUAL BASIS FOR MOTION

On December 10, 2021, Mrs. Guthrie presented her Claim for Damage, Injury, or Death to the Department of the Army Tort Claims Division as required by the Federal Tort Claims Act, Title 28 of the United States Code, Sections 2671-2680, using Standard Form 95. A copy of the Claim is attached as Exhibit "A" to this Motion. Standard Form 95 divides the "AMOUNT OF CLAIM" into several categories, including *inter alia*, "12a. PROPERTY DAMAGE," "12b. PERSONAL INJURY," and "12d. TOTAL." *See id*. On the form, Mrs. Guthrie claimed

$42,000.00 in property damage and $750,000.00 in "personal injury" for a total claim of $792,000.00. *Id.*

Counsel attached to the SF-95 a letter that provided additional details supporting the personal injury portion of Mrs. Guthrie's $792,000.00 Claim. As noted in the letter, as of December 2021, Mrs. Guthrie had incurred medical bills totaling approximately $59,409.02. *Id.* The letter describes future surgeries, including knee replacement surgery, surgery to repair a rotator cuff tear, and surgery to alleviate back pain. Counsel provided an estimate of the total cost of these future surgeries between $87,000.00 and $155,000.00. *Id*. Additionally, Mrs. Guthrie claimed $82,000.00 in lost wages and and pain and suffering "that has endured for well over 12 months." *Id*.

On February 16, 2022, the Army denied Mrs. Guthrie's Claim. On June 22, 2022, having exhausted her administrative remedies, Mrs. Guthrie filed her Complaint (doc. 1). Her Complaint included an ad damnum clause demanding judgment against the United States in the amount of $792,000, which is the same amount presented to the Army in December 2021.

During the pendency of the case, Mrs. Guthrie continued to receive medical treatment related to the accident, including the surgeries anticipated by counsel in the December 2021 letter, but also unanticipated treatment due to complications of her medical care, most notably a total knee revision surgery on December 15, 2023. Mrs. Guthrie discovered the need for the second knee surgery in the second half of 2023 (at least two years after filing suit). *See* Joint Motion to Amend Scheduling Order (doc. 23). Before the December 15, 2023 surgery, Mrs. Guthrie was unable to walk without the assistance of a walker. Within weeks of the surgery, however, Mrs. Guthrie was able to exchange her walker for a cane and shortly thereafter abandon the cane.

On at least one occasion following the first knee surgery, an aspiration of the fluid in Mrs. Guthrie's right knee tested positive for aspergillus, a fungus. Dr. Freeman would later characterize this as an "atypical infection" which required additional diagnostic treatment, nuclear medicine studies and following by infectious disease experts. During the knee revision surgery in December 2023, Dr. Freeman, in consultation with the infectious disease team, added antifungal and antibiotics to the hardware cement.[1]

One additional, reasonably unforeseen, development occurred during the second surgery. As noted, by Dr. Freeman in his operative notes "[d]espite repeated efforts to remove the well-fixed tray with minimal bone loss, there was a fracture of the posterior rim of the tibia through the stress risers of the tibial keels," i.e. during the knee revision surgery, the surgeon fractured Mrs. Guthrie's tibia, the repair of which required additional hardware.

Throughout discovery, Mrs. Guthrie has twice supplemented her Initial Disclosures to revise the total related medical bills. Due to the newly discovered evidence, e.g. complications of treatment including infection, and intervening facts, i.e. the knee revision surgery on December 15, 2023, Mrs. Guthrie now claims total related medical bills of $464,544.43. Of this figure at least $157,797.56 stem from the December 15, 2023 surgery.

## ARGUMENT AND CITATION TO AUTHORITY

By statute, any increase in the *ad damnum*, from the amount originally presented to the Army, must be "based upon newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency, or upon allegation and proof of intervening facts, relating to the amount of the claim." 28 U.S.C. § 2675(b).

---

[1] Dr. Freeman was so concerned about this "atypical infection" that he scrubbed out during the December surgery to consult extensively with the pathology team, etc.

In *Allgeier v. United States*, the Sixth Circuit affirmed a district court's decision permitting amendment and addressed the problem of newly discovered evidence and intervening facts during the pendency of the case with a reasonably foreseeable test. 909 F.2d 869, 879 (6th Cir. 1990). There, the plaintiff had been injured in a car accident and although the plaintiff had discussed knee surgery with her doctor, she was led to believe that the knee had improved before filing her claim. *Id*. The district court based its decision on three main points, which bear on Mrs. Guthrie's case:

1) plaintiff did not know fully the medical extent of her injuries and expenses at the time the administrative claim was filed;
2) permanent injuries warrant more damages than temporary ones; and
3) there was proof of additional medical treatment, risk, surgery, expense, and pain long after plaintiff's administrative claim was filed.

*Id*. at 877.

In affirming the district court's decision, the Sixth Circuit found the knee surgery and additional medical treatment to be sufficient "intervening facts" under § 2675(b) and there was "newly discovered evidence" in that the plaintiff learned her injuries were permanent. *Id*. at 877-78. A subsequent knee surgery after filing of the claim was not reasonably foreseeable because of the relative improvement in the plaintiff's condition immediately before the administrative claim was filed and the worsening of her condition over a year later.

Other courts within this Circuit have read in *Allgeier* a requirement that the plaintiff demonstrate that the new information could not have been discovered through the exercise of reasonable diligence. *Norrell v. United States*, Nos. 1:00-cv-303, 1:02-cv-013, 2002 U.S. Dist.

LEXIS 26337, at *10 (E.D. Tenn. Aug. 1, 2002); *Cowley v. United States*, 2022 U.S. Dist. LEXIS 211467 (W.D. Tenn., Nov. 22, 2022).

Mrs. Guthrie could not have reasonably discovered the fact that her first knee revision surgery would fail at the time that she filed her administrative claim, or filed her Complaint, because that surgery was not performed until nine months after suit was filed. Unlike the plaintiff in *Cowley*, Mrs. Guthrie does not based her current motion on medical bills or records that were available to her before June 2022.

Here, as in *Allgeier*, the ongoing treatment of Mrs. Guthrie's knee, *after* the March 2023 revision surgery constitutes an intervening fact that was unexpected or unforeseen. The knee manipulation that occurred in June 2023 was was recommended only when Mrs. Guthrie's condition did not improve following surgery. *See Allgeier* at 879. Unlike the plaintiff in *Cowley*, the knee manipulation, revision surgery, and infectious disease control were necessitated by infection and failure of the device, not personal preference. Based on her consultation with Dr. Bruce, and the results of the revision surgery performed by Dr. Freeman, it was reasonable to believe that Mrs. Guthrie's condition would improve after March 2023. Instead, she was unable to walk without assistance or for significant distances for nearly a year longer than anticipated.

Given these developments, at trial, Mrs. Guthrie will introduce evidence of additional medical treatment, risk, surgery, expense, and pain years after her administrative claim was filed. In presenting the administrative claim, counsel recognized that Mrs. Guthrie would require *some* medical treatment and included future medical bills estimates as high as $215,000.00. This estimate reasonably anticipated the worst-case scenario required by *Allgeier*. In fact, the cost of Mrs. Guthrie's treatment is at least $464,544.43. This represents a difference of $190,135.41 from

the costs Mrs. Guthrie could have reasonably anticipated at the time she presented her administrative claim.

Finally, given the difference between $792,000.00 and the special damages described in her demand, Mrs. Guthrie's administrative claim necessarily included general damages based on pain and suffering "that has endured for well over 12 months." The most conservative calculation of that math results in a general damages figure of $393,590.98. As noted above, Mrs. Guthrie continued to suffer between the first knee surgery and the knee revision surgery, including difficulty walking, staving off infection, and other complications. These developments support an increase in the general damages claim to the statutory cap of $750,000.00.

## CONCLUSION

For these reasons, based on newly discovered evidence and intervening facts, Mrs. Guthrie moves to increase the sum demanded from $792,000.00 to $1,338,544.43, which includes $464,544.43 in medical bills and $750,000.00 in general damages.

RESPECTFULLY SUBMITTED this 21st day of March, 2024.

*/s/ Cameron C. Kuhlman*
CAMERON C. KUHLMAN
Georgia Bar Number: 596159
*Attorney for Plaintiff*

**WETTERMARK & KEITH, LLC**
1232 Premier Drive, Suite 325
Chattanooga, TN 37421
Phone: (423) 933-1080
Fax: (205) 460-2596
ckuhlman@wkfirm.com