UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| SHARON GUTHRIE,<br><br>  Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>  Defendant. | No. 1:22-cv-00162-DCLC-SKL |

**PLAINTIFF'S REPLY IN SUPPORT OF HER MOTION
TO AMEND *AD DAMNUM* CLAUSE PURSUANT TO 28 U.S.C. § 2675(b)**

**COMES NOW** Plaintiff, by and through counsel, and files this Reply to respond to three of the government's points in opposition.

1.   In opposition to Plaintiff's Motion, the government argues that the deadline for amendments ran on October 3, 2023. Gov't Brief (doc. 36) at 2. As the government sees it, amending the ad damnum clause at this stage of the proceeding will be "undu[ly] prejudic[ial]" to the government because it "has no ability to retain medical experts to challenge these claims."

Mrs. Guthrie was not the only one on notice prior to October 3, 2023 that there were complications from her first knee surgery. The government, too, knew of the issue *and joined the motion* to revise the scheduling order on those grounds. *See* Joint Motion (doc. 23).

The parties not only worked collaboratively to schedule depositions that would accommodate the second surgery, *see generally*, Motion for Extension of Time (doc. 25), but on November 2, 2023, Mrs. Guthrie supplemented her Rule 26(a)(1) disclosures to include new medical bills. On that same day, consistent with the Amended Scheduling Order, she disclosed Dr.

Mark Freeman, M.D. as an expert witness (treating physician). Mrs. Guthrie supplemented her Rule 26(a)(1) disclosures again on March 10, 2024, to include the bills associated with the second knee surgery. As if that was not notice enough, undersigned counsel voluntarily produced Mrs. Guthrie for a second deposition following the second knee surgery to allow counsel for the government an opportunity to cross examine Mrs. Guthrie regarding her treatment.

The government can show no prejudice because it has been on notice, since at least November 2, 2023, that Mrs. Guthrie intended to rely on the expert testimony of Dr. Mark Freeman, M.D., the surgeon who performed the second knee surgery. The parties have yet to depose (for use at trial) the treating physicians. The government will be free to cross examine Dr. Freeman when he is deposed.

In short, the government wants its cake and eat it too: "Plaintiff had sufficient information to request this increase in the ad damnum before the amendment deadline expired" but "[a]t this stage of litigation when discovery is closed…Defendant has no ability to retain medical experts to challenge these claims." Gov't Brief at 3. That knife cuts both ways. If Plaintiff had sufficient information to request an increase in the ad damnum before, then the government also had sufficient information to retain medical experts to challenge these claims.

2. The government argues that the ad damnum should not be increased because "to date, Plaintiff has developed no medical proof, including any medical proof relating the injuries to her right knee or either surgical procedure performed on her right knee to the December 15, 2020 collision at issue in this case." Gov't Brief at 3-4. In doing so, the government confuses the notice requirement of 28 U.S.C. § 2675(b) with the evidentiary burden of proof Plaintiff must carry at trial. Plaintiff did not file a "Motion to Stipulate That the First Knee Surgery Was Medically Necessary as a Result of the Accident." To the extent, evidentiary proof, i.e. qualified expert

testimony is required to increase an *ad damnum* clause, Mrs. Guthrie asks that the Court set a hearing at which she will have an opportunity to do so.

3. The government implies that Mrs. Guthrie should have anticipated that a worst-case scenario prognosis would have included: (a) that the first knee surgery would fail, (2) that she would suffer an "atypical infection," and (3) that Dr. Freeman would facture her tibia during surgery. Gov't Brief at 4-6. The government finds support for its position in a Memorandum and Order entered by Judge R. Allan Edgar in *Norrell v. United States*, Nos. 1:00-cv-303, 1:02-cv-013 on Aug. 1, 2002.

In his Memorandum and Order, Judge Edgar found that "[t]he rationale in *Allgeier* is consistent with the worst-case prognosis standard [adopted by other Circuits]." *Norrell v. United States*, 2002 U.S. Dist. LEXIS 26337, at *13. Judge Edgar went on to concede, however, that "the Sixth Circuit has not yet explicitly adopted the worst-case prognosis test." 2002 U.S. Dist. LEXIS 26337, at *20. The government offers no citation to—nor has undersigned counsel be able to locate—a subsequent Sixth Circuit case explicitly adopting that test.

Instead, at least one district court disagrees with Judge Edgar that the standards are the same. A few years ago, in *Bravo-Garcia v. United States*, No. 13-2185 (NLH/JS), 2015 U.S. Dist. LEXIS 4727, at *12 (D.N.J. Jan. 15, 2015), that court canvassed the cases and identified three different approaches to amendments under § 2675(b): the worst-case prognosis test adopted by the Fifth and First Circuits; the reasonably discoverable test adopted by the Second, Fourth, Sixth and Eighth Circuits, and the change in expectations test adopted by the Eleventh Circuit. *Id*. (citations omitted).

Even if, as Judge Edgar suggested, *Allgeier* is synonymous with the worst-case prognosis test, the latter must necessarily include the former's requirement of reasonableness. *Allgeier v. United States*, 909 F.2d 869, 879 (6th Cir. 1990) ("the significant worsening of her condition well over a year later, the need for the second operation and extensive additional treatment were not *reasonably foreseeable* at the time the administrative claim was filed.").

In fact, other district courts continue to rely on *Allgeier* in deciding to allow an increase in *ad damnum*. *See e.g. Castelluccio v. United States*, No. 1:17-CV-190 (TJM/DJS), 2019 U.S. Dist. LEXIS 225839, at *15 (N.D.N.Y. Dec. 20, 2019) (citing *Allgeier* and finding complications of pre-existing medical condition "in the years following the filing of [plaintiff's] administrative claim constitute a sufficient basis under § 2675(b) to grant the amendment of the ad damnum clause"); *Bravo-Garcia*, 2015 U.S. Dist. LEXIS 4727, at *27 (citing *Allgeier* and finding plaintiff "could not have reasonably discovered before his Amended Notice was filed that his psychiatric symptoms were causally related to his closed head injury or that he would be diagnosed in January 2013"); *Creech v. United States*, C.A. No. 06-279, 2007 U.S. Dist. LEXIS 19289, 2007 WL 853768 (W.D. Va. Mar. 16, 2007) (allowing amendment where the plaintiff knew she suffered from shoulder and neck pain at the time her administrative claim was filed but was not diagnosed with radiculopathy until afterward); *Lopatina v. United States*, C.A. No. 09-2852, 2011 U.S. Dist. LEXIS 143001, 2011 WL 6217036, at *4 (D. Md. Dec. 13, 2011) aff'd, 528 Fed. Appx. 352 (4th Cir. 2013) (plaintiff permitted to seek damages beyond administrative tort claim at trial where shoulder injury "evolved" into a neck problem requiring surgery).

Because the bases for amendment here more closely track the facts at issue in those cases where amendment was permitted, i.e. complications of pre-existing conditions, subsequent diagnoses, a second surgery and atypical infection, and those bases are distinguishable from the

grounds at issue in *Norrell*, i.e. a "miscalculation" of the future medical bills, Plaintiff asks that she be allowed to amend her *ad damnum*.

                                                                           */s/ Cameron C. Kuhlman*
                                                                           CAMERON C. KUHLMAN
                                                                           Georgia Bar Number: 596159
                                                                           *Attorney for Plaintiff*

**WETTERMARK & KEITH, LLC**
1232 Premier Drive, Suite 325
Chattanooga, TN 37421
Phone: (423) 933-1080
Fax: (205) 460-2596
ckuhlman@wkfirm.com