UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA DIVISION

| | |
|---|---|
| SHARON M. GUTHRIE, | ) |
| Plaintiff, | ) |
| v. | ) No. 1:22-cv-00162-DCLC-SKL |
| UNITED STATES OF AMERICA, | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

Before the Court is a Motion to Amend Ad Damnum Clause Pursuant to 28 U.S.C. § 2675(b) [Doc. 34] filed by Plaintiff Sharon Guthrie ("Plaintiff"). Defendant United States of America ("Defendant") filed a response in opposition [Doc. 36], and Plaintiff filed a reply [Doc. 39]. This matter is now ripe.

### I. BACKGROUND

This case arises from a motor vehicle collision between Plaintiff and Samuel Anderson, which occurred on December 15, 2020. Anderson was driving a Palletized Load System truck which was owned by the United States Department of the Army, and Anderson was acting within the scope of his employment with the Tennessee National Guard. Plaintiff submitted an administrative claim pursuant to the Federal Tort Claims Act ("FTCA") on December 10, 2021. The claim sought $42,000 for property damage and $750,000 in "personal injury" damages, for a total of $792,000 [Doc. 34-1 at Page ID # 577]. A settlement demand letter attached to the claim indicates as of December 2021, Plaintiff had incurred $59,409.02 in medical treatment costs, and she was expected to incur future treatment costs ranging between $87,000 and $155,000. The

claim also sought $82,000 for unpaid wages and an unspecified amount for non-economic damages (i.e., pain and suffering).[1]

The Army denied the administrative claim on February 16, 2022, and Plaintiff filed suit on June 22, 2022. The original complaint [Doc. 1] sought $792,000 in damages, consistent with the administrative claim.

As Plaintiff notes in her motion, she continued to receive medical treatment after filing suit. In particular, she had knee surgery in March 2023. Because Plaintiff was already aware she would need this surgery when she filed her administrative claim, the costs of it are included in Plaintiff's original $792,000 damages request. However, Plaintiff experienced complications following this surgery, including what she describes as an "aspiration of fluid" in her knee, which turned out to be a fungus that was later characterized as an "atypical infection." [Doc. 34 at Page ID # 573]. Plaintiff ultimately underwent a "total knee revision surgery" in December 2023, during which certain hardware was replaced, antifungals and antibiotics were added, and new hardware was added for a tibial fracture that occurred during the second surgery [*id.* at Page ID # 572-73]. Plaintiff asserts her treatment costs increased by "at least $157,797.56" as a result of the December 2023 surgery alone, and her overall treatment costs now total $464,544.43 [*id.* at Page ID # 573], a significant increase over the amount accounted for in her administrative claim and in her original complaint. Plaintiff also claims her pain and suffering damages have increased up to the statutory limit in Tennessee of $750,000,[2] as a result of the complications she experienced and additional treatment she was required to undergo.

---

[1] It appears the $750,000 personal injury aspect of the claim included the past and future treatment costs, pain and suffering damages, and unpaid wages.

[2] The FTCA does not create a cause of action; rather, it "waives sovereign immunity to the extent that state-law would impose liability on 'a private individual in similar circumstances.'" *Myers v.*

2

As a result, Plaintiff now moves to amend her complaint to increase her damages request from $792,000, to $1,338,544.43, including $464,544.43 in total treatment costs and $750,000 for pain and suffering (plus the original amounts for lost wages, $82,000, and for property damage, $42,000).

Pursuant to the Amended Scheduling Order [Doc. 30], the deadline for amending pleadings passed on October 3, 2023. Discovery in this case closed on February 16, 2024, and the dispositive motions deadline expired on March 1, 2024.

## II.  ANALYSIS

The Court will first address whether Plaintiff's proposed damages increase meets the newly discovered evidence/intervening facts exception to the sum certain notice requirements of the FTCA, codified at 28 U.S.C. § 2675. The Court will then address whether this proposed amendment to Plaintiff's complaint should be allowed under Federal Rules of Civil Procedure 15 and 16, despite its untimeliness.

### A.  The FTCA

The FTCA provides, in relevant part:

> (a) An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. . . .

---

*United States*, 17 F.3d 890, 894 (6th Cir. 1994) (quoting 28 U.S.C. § 2674). Courts applying the FTCA must, therefore, "look to the substantive tort law of the state in which the cause of action arose to determine liability and damages." *Huddleston v. United States*, 485 F. App'x 744, 745 (6th Cir. 2012). Tennessee imposes a $750,000 cap on noneconomic damages. *See* Tenn. Code Ann. § 29-39-102.

> **(b)** Action under this section shall not be instituted for any sum in excess of the amount of the claim presented to the federal agency, except where the increased amount is based upon newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency, or upon allegation and proof of intervening facts, relating to the amount of the claim.
>
> . . . .

28 U.S.C. § 2675 (emphasis added). In other words, damages recoverable in a personal injury/property damage action filed pursuant to the FTCA are generally limited to the amount the plaintiff seeks in their administrative claim. *See Kirk v. United States*, No. 1:05-cv-112, 2006 WL 1459867, at *1 (W.D. Mich. May 25, 2006). The purpose of the "sum certain" requirement in the FTCA "is to ensure that federal agencies charged with making an initial attempt to settle tort claims against the United States are given full notice of the government's potential liability." *Allgeier v. United States*, 909 F.2d 869, 878 (6th Cir. 1990).

When seeking damages in excess of those sought in the administrative claim, the plaintiff bears the burden of showing the increased amount is justified by "newly discovered evidence not reasonably discoverable at the time of presenting the [administrative] claim," or on "intervening facts."[3] 28 U.S.C. § 2675(b); *Allgeier*, 909 F.2d at 877. To meet this burden, "a plaintiff must show the new evidence or intervening facts were not reasonably capable of detection at the time the administrative claim was filed. The plaintiff is required to demonstrate that the new information could not have been discovered through the exercise of reasonable diligence." *Norrell v. United States*, Nos. 1:00-CV-303, 1:02-cv-013, 2002 WL 32060141, at *3 (E.D. Tenn. Aug. 1, 2002) (citing *Dickerson ex rel. Dickerson v. United States*, 280 F.3d 470, 475-76 (5th Cir.2002);

---

[3] The parties do not draw a distinction between "newly discovered evidence" and "intervening facts," and there does not appear to be a relevant distinction for purposes of addressing Plaintiff's motion.

*Lebron v. United States*, 279 F.3d 321, 330 (5th Cir. 2002); *Low v. United States*, 795 F.2d 466, 470 (5th Cir.1986)).

In *Allgeier*, the Sixth Circuit adopted a "stricter reading of 'intervening fact,'" which requires that damages in excess of administrative claim be reasonably "unexpected or unforeseen." 909 F.2d at 878; *see also id.* at 879 (affirming award of damages in excess of administrative claim, holding that "because of the relative improvement in [the plaintiff's] condition immediately before the administrative claim was filed and the significant worsening of her condition well over a year later, the need for the second operation and extensive additional treatment **were not reasonably foreseeable** at the time the administrative claim was filed" (emphasis added)).

The parties dispute whether these standards embody the "worst-case prognosis" test, but the Court finds it unnecessary to resolve that particular issue. Even under the standards/test as articulated by Defendant, the Court finds the complications (including pain and suffering) from Plaintiff's first knee surgery and the necessity of a second knee surgery constitute "newly discovered evidence" and/or "intervening facts" post-dating the filing of Plaintiff's administrative FTCA claim and sufficient to meet the requirements of the sum certain exception.

In *Norrell*, this Court explained the worst-case prognosis test as follows:

> When a plaintiff files an FTCA administrative claim, he must take care to cover the worst-case scenario by setting a maximum limit on the dollar amount of his claim that takes into account the worst-case medical prognosis of his known injury or condition. Post-administrative claim information can be newly discovered evidence or an intervening fact under 28 U.S.C. § 2675(b) if it sheds significant new light on the basic severity of the claimant's injury or condition, i.e. if it materially differs from the worst-case prognosis of which the claimant either knew or reasonably could have known when the administrative claim was filed. . . .
>
> . . . . If [a claimant] misjudges as to matters that are known to him or capable of being deduced by him through the exercise of

5

> reasonable diligence when his administrative claim is filed, then it is more equitable, given the narrow purpose and strict construction of the FTCA's waiver of sovereign immunity, for [the claimant] to bear the burden of his miscalculation rather than to impose it on the federal government.

2002 WL 32060141, at *7 (citations omitted).

In *Norrell*, the claimant sought to increase his compensatory damages request from $259,500 (from his administrative claim) to $650,000, because he underwent spinal fusion surgery after filing his administrative claim. This Court denied the request, reasoning that prior to filing the claim, the claimant knew he had a significant cervical spine injury and he opted to follow "a conservative course of treatment using physical therapy and medication." *Id.* at *5. When the conservative treatment did not achieve the desired result, the claimant "made the decision to have spinal fusion surgery." *Id.* The Court found an "objectively reasonable person" standing in the claimant's shoes when he filed his administrative claim "could have expected and foreseen that it might very well become necessary in the future to have surgery." *Id.* at *6. The Court reasoned the subsequent need for surgery following a failed attempt at conservative treatment only addressed "the precision with which the severity of his injury or condition could have been known," and it did not "shed new light on" the claimant's condition or "materially differ[]" from the worst-case prognosis. *Id.* at *7 (citation omitted). The Court emphasized the administrative claim itself sought $250,000 for medical treatment, which was in excess of the costs of the conservative treatment course, thereby reflecting the claimant himself reasonably believed surgery was a possibility, even if he did not adequately account for the costs. *Id.* at *6.

The Court contrasted the facts of *Norrell* with those in *Allgeier*. The Court noted the "key factor" in *Allgeier* was that prior to filing her administrative claim, the claimant received information that led her to "believe that her injuries were only temporary and were largely cured

6

such that no additional surgery would be necessary." *Id.* at *4 (discussing *Allgeier*). More than one year after filing her administrative claim, her condition significantly worsened. She learned her injuries would be permanent and she would require a second surgery, which was "contrary to her physician's prognosis" made prior to the filing of her administrative claim. *Id*. The Court in *Norrell* identified "three main points" the *Allgeier* decision was based on: (1) the claimant "did not know fully the medical extent of her injuries and expenses at the time the administrative claim was filed; (2) permanent injuries warrant more damages than temporary ones; and (3) there was proof of additional medical treatment, risk, surgery, expense, and pain long after [the] administrative claim was filed." *Id.* at *3 (citing *Allgeier*, 909 F.2d at 877).

In this case, Plaintiff did not even have her first knee surgery until after her administrative claim was filed, and therefore she had not begun to experience the complications that followed the first surgery. No amount of diligence could have led Plaintiff to discover the infection and other complications prior to filing her administrative claim in December 2021, because they only developed after the surgery in March 2023. A reasonable person might anticipate rehabilitation and physical therapy following a knee surgery, and perhaps as a worst-case prognosis, lifelong pain and limitations on mobility if the surgery was not completely successful. But it is not reasonable to expect a claimant to anticipate, even as a worst case, that a knee surgery will lead to an atypical fungal infection which necessitates a total revision surgery six months later. As Plaintiff's points out, the second surgery did not result from Plaintiff's choice to pursue treatment options in a certain sequence; rather, it was necessitated (at least allegedly) by an unexpected and serious infection following the first surgery. *Cf. Cowley v. United States*, No. 21-cv-2779-SHM-tmp, 2023 WL 4370439, at *3 (W.D. Tenn. July 6, 2023) (holding surgeries not grounds for increased damages from those sought in administrative claim, reasoning: "This case is unlike

7

*Allgeier*, in which surgery was an intervening fact because surgery was recommended only when [the plaintiff's] condition unexpectedly became worse. **Here, Plaintiff's decision to postpone surgery was a personal preference**." (emphasis added)).

Defendant argues "[a]ll surgical procedures have certain risks and complications," such that Plaintiff "through the exercise of reasonable diligence could have known of the complications of infection and failure of the total knee replacement, as well as the need for additional surgery . . . when the administrative claim was filed." [Doc. 36 at Page ID # 592]. This argument is not supported by citation to the record or to relevant authority, and the Court finds it inconsistent with the authorities discussed above. Plaintiff's case may fall somewhere in between *Allgeier* and *Norrell* on the foreseeability spectrum, but it still fits comfortably within the definition of newly discovered evidence or intervening facts, such that the FTCA does not prohibit Plaintiff from requesting damages in excess of those sought in her administrative claim.

B.   **Federal Rules of Civil Procedure**

As Defendant points out, Plaintiff must also meet applicable standards for permitting an untimely amendment of a pleading, because Plaintiff's motion to amend was filed more than five months after the October 3, 2023 deadline had expired.

Federal Rule of Civil Procedure 15 directs that, where an amendment is not made as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.* Factors relevant in determining whether leave should be denied include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of the amendment." *See Foman v. Davis*, 371 U.S. 178, 182

8

(1962); *see also Leary v. Daeschner*, 349 F.3d 888, 905 (6th Cir. 2003). To determine whether a proposed amendment is futile, courts apply standards applicable to a Rule 12(b)(6) motion to dismiss. *See Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000) (citing *Thiokol Corp. v. Dep't of Treasury*, 987 F.2d 376, 382-83 (6th Cir. 1993)). Delay alone does not typically justify denial of leave to amend. *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002).

Because Plaintiff's motion to amend was filed more than five months after the deadline for amending pleadings, in effect she is asking the Court to modify the Amended Scheduling Order. A scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "The primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements." *Inge v. Rock Fin. Corp.,* 281 F.3d 613, 625 (6th Cir. 2002) (quoting *Bradford v. DANA Corp.,* 249 F.3d 807, 809 (8th Cir. 2001)). "Another relevant consideration is possible prejudice to the party opposing the modification." *Id.; see also Moore v. Indus. Maint. Serv. of Tenn., Inc.*, 570 F. App'x 569, 577 (6th Cir. 2014).

Defendant argues Plaintiff could have moved to increase her damages request to include an estimated cost for the second surgery, related treatment, and pain and suffering prior to the October 3, 2023, deadline for amending pleadings. Defendant argues it will suffer undue prejudice is Plaintiff is permitted to do so now, "when discovery is closed and Defendant has no ability to retain medical experts to challenge these claims." [Doc. 36 at Page ID # 589].

Plaintiff does not address in any detail the specific reason she delayed moving to amend. Nevertheless, Plaintiff is not asserting any new claims or additional forms of relief beyond an increase in damages, and there is no indication Plaintiff has acted in bad faith or with the intent to

9

"sandbag" Defendant with the increase at this stage of the proceedings. As Plaintiff indicates in her reply, Defendant has long been on notice of the complications arising from the first knee surgery. Indeed, the parties' Joint Motion to Amend Scheduling Order [Doc. 23], filed September 26, 2023, provides:

> 3. The parties have diligently engaged in the process of discovery since the entry of the Court's Scheduling Order, including the exchange of paper discovery and preparation for depositions. Plaintiff's treatment has continued throughout this time.
>
> 4. As the parties were preparing to conduct fact witness depositions, Plaintiff learned from her treating physician that there are complications from a knee surgery performed earlier this year. Those complications will, in the opinion of Ms. Guthrie's treating physician, require additional surgical intervention, currently scheduled for the second week in October.
>
> 5. Given these new developments, i.e. Plaintiff's continued medical treatment, the parties contend that depositions should be postponed until after Ms. Guthrie's surgery in October.

[Doc. 23 at Page ID # 62-63].

Plaintiff indicates she updated her Rule 26(a)(1) disclosures on November 2, 2023, and again on March 10, 2024, to provide Defendant with the more recent medical bills and other relevant information. She also sat for a second deposition after the second surgery [Doc. 39 at Page ID # 644-45]. At some point along the way, Defendant surely gleaned Plaintiff's intent to seek damages related to her ongoing serious knee issues (including the costs of the second surgery), even though Plaintiff had not filed a motion to amend. Defendant complains about the inability to retain an expert to challenge the additional damages, but Defendant does not address its choice not to retain one sooner considering the manner in which Plaintiff's injuries, and this case, have progressed.

10

One final point: Defendant also makes a passing argument regarding Plaintiff's alleged lack of expert proof relating her knee injury and the surgeries to the December 2020 collision that forms the basis for this lawsuit [*see* Doc. 36 at Page ID # 589-90]. This argument is not properly addressed in the context of a motion to amend the complaint. *See Rose*, 203 F.3d at 420-21 (courts not permitted to consider facts outside the proposed amended pleading when determining whether the amendment is futile).[4]

Accordingly, the Court will exercise its considerable discretion in this area to permit Plaintiff to file an amended complaint that increases her damages request from $792,000 to $1,338,544.43. Put simply, justice would not be served by denying the amendment based on the record currently before the Court.

### III. CONCLUSION

For the reasons set for the above, Plaintiff's Motion to Amend Ad Damnum Clause Pursuant to 28 U.S.C. § 2675(b) [Doc. 34] is **GRANTED**. Plaintiff is **ORDERED** to file an Amended Complaint as a separate docket entry within **SEVEN DAYS** of entry of this Order.[5] Plaintiff is **ORDERED** to limit the amendment consistent with this Order; that is, she is authorized to increase her damages request from $792,000 to $1,338,544.43. No additional amendments are authorized by entry of this Order.

Discovery is now closed, and the parties are **ON NOTICE** the Court does not consider the relief ordered herein to serve as a basis for a general reopening of discovery or resetting of all

---

[4] The Court does not address the statement in Plaintiff's reply brief that the "parties have yet to depose (for use at trial) the treating physicians." [Doc. 39 at Page ID # 645].

[5] Although Plaintiff did not include a proposed amended complaint as required by Eastern District of Tennessee Local Rule 15.1, given the nature of the proposed amendment, the Court declines to deny the motion on this basis.

11

pretrial deadlines. If Defendant wishes to apply to the Court for specific relief from the Amended Scheduling Order to address the prejudice it claims will result from allowing Plaintiff's proposed amendment, Defendant may file a separate, properly-supported motion seeking such relief, which the Court will address as needed. Before filing any such motion, Defendant is **ORDERED** to confer with Plaintiff to determine whether the motion is opposed.

SO ORDERED.

ENTER:

*s/ Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE