# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## AT CHATTANOOGA

| | |
|---|---|
| **SHARON GUTHRIE,** | |
| **Plaintiff,** | |
| **v.** | No.  1:22-cv-00162-DCLC-SKL |
| **THE UNITED STATES OF AMERICA,** | |
| **Defendant.** | |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO
## MOTION TO AMEND THE SCHEDULING ORDER

**COMES NOW** Plaintiff, by and through counsel, and files this response in opposition to the government's motion [Doc. 42]. In its motion, the government feigns surprise that this is suddenly a "different case" than it was on December 15, 2023. *Id*. The government needs more time, it says, to respond to Plaintiff's "late-stage…efforts." *Id*.

The key question is not, as the government suggests, whether "[t]he United States should be provided an opportunity to respond," *see id*., but rather "[a]t [what] point along the way, Defendant surely gleaned Plaintiff's intent to seek damages related to her ongoing serious knee issues (including the costs of the second surgery)[?]" *See* Order (April 19, 2024) [Doc. 40].

Was it 939 days from trial?[1]

---

[1] *See* Administrative Claim dated December 10, 2021 [Doc. 34-1 at PageID # 580-81, 584] (describing imaging of Ms. Guthrie's right knee, referral to Dr. Jeremy Bruce for knee surgery, and providing an estimated cost for future knee replacement surgery).

Was it 748 days from trial?[2]

Was it 377 days from trial?[3]

Was it 301 days from trial?[4]

Was it 287 days from trial?[5]

Was it 250 days from trial?[6]

Was it 223 days from trial?[7]

Was it 140 days from trial?[8]

Was it 138 days from trial?[9]

Was it 121 days from trial?[10]

Was it 117 days from trial?[11]

---

[2] *See* Complaint [Doc. 1 at PageID # 4] (including *ad damnum* identical to the amount listed in the Administrative Claim).

[3] On June 28, 2023, Plaintiff answered the government's Interrogatories and produced responsive documents related to her treatment by Dr. Bruce. In particular, she answered Interrogatory No. 8 in part "[a]s a result of the collision, I suffered…a torn meniscus in my right knee…[and] [t]he following medical providers treated me for these injuries…Dr. Jeremy Bruce."

[4] On or about September 12, 2023, counsel for plaintiff called counsel for the government to discuss the knee replacement surgery complications and the potential impact on scheduling. During the call, counsel discussed the likelihood of a second surgery.

[5] See Joint Motion to Amend Scheduling Order [Doc. 23 at PageID # 62-63] (specifically offering as the basis for amendment Plaintiff's discovery of "complications from a knee surgery performed earlier this year…[which] will, in the opinion of Ms. Guthrie's treating physician, require additional surgical intervention").

[6] *See* Plaintiff's Expert Disclosures (identifying both Dr. Jeremy Bruce, MD and Dr. Mark Freeman, MD, among others). What the government characterizes as a "'bare bones' expert disclosure" is in fact all that Rule 26 requires. *See* Fed. R. Civ. P. 26(a)(2)(C) (Witnesses Who Do Not Provide a Written Report).

[7] *See* Deposition of Sharon Guthrie [Doc. 31-2 PageID #311] (including at least 43 mentions of "knee").

[8] On February 20, 2024, undersigned counsel emailed counsel for the government offering Mrs. Guthrie for a second deposition.

[9] On February 22, 2024, counsel for the government replied accepting the invitation to depose Mrs. Guthrie, but also asking whether the case was ripe for mediation. After mediation was scheduled, counsel for the government postponed mediation, further running down the trial clock.

[10] On March 10, 2024, Plaintiff again supplemented her Initial Disclosures to include the second knee surgery bills.

[11] On March 14, 2024, Mrs. Guthrie sat for her second deposition (by agreement of counsel).

Was it 110 days from trial?[12]

The only "late-stage…effort[]" here is by the government, to apparently, and finally, take

this case seriously. *Cf.* Gov't Motion [Doc. 42 at PageID # 668].[13] The motion should be denied.

*/s/ Cameron C. Kuhlman*
CAMERON C. KUHLMAN
Georgia Bar Number: 596159
*Attorney for Plaintiff*

**WETTERMARK & KEITH, LLC**
1232 Premier Drive, Suite 325
Chattanooga, TN 37421
Phone: (423) 933-1080
Fax: (205) 460-2596
ckuhlman@wkfirm.com

---

[12] *See* Motion to Amend Ad Damnum Clause [Doc. 34].

[13] One final note on waiting: by the government's count, "Plaintiff has waited until less than sixty (60) days from trial to begin the process of attempting to meet her burden of medical causation in this case." Gov't Motion [Doc. 42 at PageID # 668] On this math, Mrs. Guthrie is still in waiting as it is now seventy (70) days from trial. Regardless, Tenn. Code Ann. § 24-9-101(a) does not apply in federal court. *Cowley v. United States*, No. 21-CV-02779-SHM-tmp, 2022 U.S. Dist. LEXIS 211467, at *5-6 (W.D. Tenn. Nov. 22, 2022). Mrs. Guthrie can meet her burden *at trial* with the live testimony of her treating physicians who are not exempt from the Court's subpoena power. For its part, the government waited nearly six months (179 days) to complain about the sufficiency of Plaintiff's Expert Disclosures under Rule 26. The government did not raise this point while discovery was still open; it did not notice depositions of any of Plaintiff's treating physicians, nor did it otherwise challenge them under Fed. R. Evid. 702 et seq., despite more than sufficient notice of its opportunity to do so.